UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANTONIETTA NGUYEN.<br>Defendant. | Case No. 23-cr-0155<br><br>FINAL PRETRIAL SCHEDULING ORDER |

On May 20, 2025, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning June 2, 2025. All parties were represented by counsel. The following matters were resolved:

1.  **Trial schedule:** The trial day runs from 9:00 a.m. until 4:00 p.m., with a 15 minute break at 10:30 a.m., a 30 minute break at noon and a 15 minute break at 2:00 p.m., all times approximate. The Court does not hear trials on Fridays (although deliberating juries may continue their deliberations on Fridays).

2.  **Number of jurors and challenges:** There will be a jury of twelve members, plus 2 alternate jurors. The government shall have seven peremptory challenges, the defendant shall have eleven peremptory challenges.

3.  **Voir dire:** The prospective jury pool will have filled out questionnaires, which will be provided to counsel on May 23, 2025. By noon on Tuesday, May 27, 2025, counsel shall meet and confer to determine whether they agree that any potential juror(s) should be excused for cause. The

1  result of that conference shall be discussed with the Court at a conference for Tuesday, May 27,
2  2025, at 2:00 pm.  Beginning at 9:00 a.m. on June 2, 2025, the Court will conduct general voir dire.
3  Counsel for each side shall have up to 20 minutes total to question the panel.

**4.** **Trial exhibits:**  No later than Friday, May 30, 2025, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit.  The Court shall be provided with two sets (the originals for the file, one set for the Court) and one additional set for opposing counsel.

**5.** **Motions in Limine**

Defendant filed nineteen motions in limine.  Dkt. No. 72 ("Def. MIL").  The government filed ten motions in limine.  Dkt. No. 73 ("Gov't MIL").

### A.  Defendant's Motions in Limine
#### 1.  Preclusion of ABS Seafood's Quickbooks

Defendant has requested that the Court preclude as evidence ABS Seafood's Quickbooks entries. Def. MIL at 6-8. Defendant argues that third parties had access to the Quickbooks account and the government will struggle to show that they were "created and exclusively maintained by Ms. Nguyen." *Id.* at 7. Defendant argues this evidence suffers from authentication, chain of custody, and hearsay problems. *Id.* at 7-8.

The government responds that it intends to offer testimony that will establish a prima facie case that the Quickbooks extracts are what the government says they are. Dkt. No. 84 ("Gov't Opp'n") at 1-2. Once that burden is met, any further argument about the accuracy of the entries goes to weight of the evidence, not its admissibility. *Id.* (citing *United States v. Ortiz*, 776 F.3d 1042, 1045 (9th Cir. 2015); *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir.1988)).

The Court DENIES defendant's motion. The government may attempt to make a prima facie case of the authenticity of the Quickbooks file extracts.

### 2. ABS Corporate Documents Prior to June 2006

Defendant states that she became a shareholder, investor and employee of ABS Seafood in the fall of 2006 and argues that corporate documents prior to her joining the company are irrelevant under Rule 401.[1] Def. MIL at 8. The government responds that it should be allowed to introduce the company's bylaws, which were adopted in 2004 but remained in place during defendant's tenure with the company. Gov't Opp'n at 3-4. The Court agrees with the government. Defendant's request is DENIED. Defendant may object to other corporate documents on any basis during trial, should they be introduced.

### 3. ABS Corporate Documents that are not Legally Binding

Defendant argues that, for authenticity purposes, the government must prove that ABS Seafood corporate documents from the fall of 2006 and after "are in proper legal order not just that they possess a government stamp." Def. MIL at 8-9. The government affirms that it must authenticate any such documents. Gov't Opp'n at 4. The Court agrees that any documents must be properly authenticated. The motion is DENIED as moot.

### 4/5. Settlement Negotiations and Evidence of Prior Civil Suit

Under Rule 408, defendant seeks to exclude evidence related to negotiations that led to a settlement in a civil case between her and the company. Def. MIL at 9. The government "generally agrees," but argues that if evidence of the prior civil suit is introduced to show defendant's state of mind, then the resolution of that suit must also be admitted. Gov't Opp'n at 5. The parties may not elicit testimony or evidence related to the prior suit. If a witness opens the door by mentioning the prior lawsuit, the Court will allow evidence to show that Ms. Nguyen sued ABS Seafoods and that the parties' settlement resulted in Ms. Nguyen paying ABS Seafoods a monetary award.

---

[1] References to rules are to the Federal Rules of Evidence, unless otherwise noted.

### 6. Physical Display of Luxury Items

Defendant argues that the in-courtroom display of luxury items allegedly purchased by defendant is unfairly prejudicial under Rule 403. Def. MIL at 10. Defendant allows that the government may show pictures and describe the items if they are relevant. *Id.* The government responds that it intends to only introduce "several purses" and will elicit testimony to describe the extent of the rest of the goods seized. Gov't Opp'n at 5. The Court will allow the government to make a limited showing of up to eight purses tied to the charged counts.

### 7. Rumors of Theft from a Previous Employer

Defendant seeks to exclude any testimony regarding a rumor that she stole from a previous employer under Rule 404(b) when the government has not provided her written notice of intent to offer this evidence. Def. MIL at 10. The government does not intend to elicit testimony about such a rumor. Gov't Opp'n at 5. The motion is DENIED as moot. The government then seeks in its opposition to exclude evidence that ABS Seafood's CEO, Henry Ichinose, embezzled money from the company himself. *Id.* at 6. That request is GRANTED.

### 8. Evidence Regarding Claims that Defendant Deleted her Emails

Defendant asks that the Court exclude as unfairly prejudicial any evidence that she deleted her work emails prior to leaving ABS Seafood, because there is no proof that she did so and no motive for doing so when she did not know she would be leaving the company. Def. MIL at 11. The government responds that it intends to offer testimony to support its allegation that she deleted some emails and asserts that any prejudice from this evidence does not substantially outweigh the evidence's probative value, as it goes to her state of mind. Gov't Opp'n at 7-8. The Court agrees and DENIES defendant's motion.

### 9. Testimony of Chris Kondo

Defendant requests that the Court preclude Chris Kondo, the Chief Operating Officer for ABS Seafood, from testifying on the basis of incompetency. Def. MIL at 12-13. Defendant cites

4

to statements made during Mr. Kondo's interview with the FBI. *Id.* The government argues that a mental health diagnosis is not automatically disqualifying and notes that the jury can weigh Mr. Kondo's credibility. Gov't Opp'n at 7-8. The government will not object to "limited, respectful cross-examination" about Mr. Kondo's mental illness. *Id.* at 8. The Court will allow the jury to evaluate Mr. Kondo's credibility. Defendant's motion is DENIED.

### 10. Defense Investigator as Case Agent

Defendant requests that, under Rule 615(a)(3), her investigator, Sebastian Wiggs, be allowed to remain in the courtroom throughout trial, even though defendant may call him as a witness. Def. MIL at 13-14. The government objects, stating that defendant has not adequately explained that Mr. Wiggs' presence throughout trial is essential under Rule 615(a)(3). Gov't Opp'n at 8-9. The Court agrees with defendant that her investigator's presence at trial may be essential to the defense. The Court GRANTS defendant's motion.

### 11. Grand Jury Transcripts

Defendant requests that the Court order production of all the grand jury transcripts, in particular the testimony of Luis Ramos.[2] Def. MIL at 14. The government responds that it has provided all grand jury testimony from witnesses it intends to call for its case, as required by the Jencks Act. Gov't Opp'n at 10. Codified at 18 U.S.C. § 3500, the Jencks Act requires the government to produce prior statements from witnesses it has called to testify. If the government does not call a witness, the Jencks Act does not apply. And Federal Rule of Criminal Procedure 6(e)(3)(E) only allows a court to order disclosure of grand jury proceedings in certain limited circumstances, including "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Defendant has shown no such grounds, and her request is DENIED.

---

[2] According to the government, Luis Ramos is defendant's estranged brother. Gov't Opp'n at 10-11.

#### 12. Designating Government Witnesses as Under Defense Subpoena

Defendant asks the Court to consider any of the government's listed witnesses to be under defense subpoena as well, so the government cannot release them from testifying without making them available for the defense. Def. MIL at 14. The government strenuously opposes this request, arguing that defendant can issue subpoenas to any individual witnesses she deems necessary. Gov't Opp'n at 11-12. The Court agrees and DENIES defendant's motion.

#### 13. Indictments

Defendant requests that the Court not allow the jury to see the indictment or superseding indictment in this case. Def. MIL at 15-16. The government defers to the Court's general practice in this regard. Gov't Opp'n at 12. The Court generally does not allow the jury to see the indictment. The motion is GRANTED.

#### 14. Production of *Henthorn/Brady/Giglio/Jencks* Materials

Defendant asks the Court to "remind the government of its continuing obligation" to make legally required disclosures to the defense. Def. MIL at 16-18. Specifically, defendant highlights this includes information that question witness credibility or bias, including benefits conferred upon witnesses. *Id.* The government notes that it has complied and will continue to comply with its disclosure obligations and that it has previously told defense counsel that it has not offered payment or immunity to its fact witnesses. Gov't Opp'n at 12. The motion is GRANTED.

#### 15. Vouching

Defendant seeks to preclude the government prosecutor and agents from vouching. Def. MIL at 18-19. The government does not intend to vouch. Gov't Opp'n at 13. The motion is GRANTED.

### 16. Evidence Outside the Scope of the Indictment

Citing her constitutional rights, defendant asserts that she can only be tried on evidence related to the charges in her indictment. Def. MIL at 19-20. The government confirms it does not intend to constructively amend the superseding indictment. Gov't Opp'n at 13. The Court can address any specific evidentiary concerns during trial. The motion is GRANTED.

### 17. Evidence of Previous Acts Barred by the Statute of Limitations

Defendant asks the Court to preclude evidence of prior acts that fall outside of the five-year statute of limitations for wire fraud—in other words, evidence of acts occurring prior to May 30, 2018. Def. MIL at 20-21. The defense asserts the government wants to introduce evidence of defendant's alleged fraud dating back to 2014. *Id.* at 20. The government responds that the statute of limitations exists to bar charges where the criminal conduct ended outside the limitations period. Gov't Opp'n at 13. Here, defendant continued her alleged conduct beyond May 30, 2018 and the charges are not excluded by the statute of limitations. The government cites authority from the Third Circuit holding that evidence from outside the statute of limitations can be used to prove wire fraud within the statute of limitations. *Id.* (citing *United States v. James*, 955 F.3d 336, 342 (3d Cir. 2020)). Defendant does not provide contrary authority. Defendant's motion is DENIED.

Defendant also justifies its request under Rule 404(b), limiting disclosure of a defendant's prior bad acts. The government's Motion in Limine No. 4 addresses this issue, and the Court considers it below.

### 18. The Terms "Scheme to Defraud" or "Embezzlement"

Defendant asserts that the use of these terms "embodies a highly prejudicial legal conclusion and thus is inadmissible," in particular if used by an expert witness. Def. MIL at 22-23. The government contends this is an objection that should be raised when necessary during trial. Gov't Opp'n at 14. The Court finds these terms, as commonly understood, are not inherently highly prejudicial in all circumstances. Thus the motion is DENIED without prejudice. The defense may assert objections where appropriate during trial.

7

#### 19. Failure to Provide Honest Services and Fiduciary Duty

Defendant requests that the Court bar the government from referencing a failure to provide honest services to ABS Seafood, as defendant has not been charged under 18 U.S.C. § 1346. Def. MIL at 23. Defendant likewise asks that the government be precluded from referencing defendant's fiduciary duty to her former employer. *Id.* at 23-24. The government responds that evidence in support of the charges in the superseding indictment may touch on subjects like the defendant's fiduciary duties. Gov't Opp'n at 15-16. To the extent that defendant seeks to eliminate evidence relevant to the charges in the superseding indictment, the motion is DENIED without prejudice.

### B. The Government's Motions in Limine

#### 1. Defendant's Statements

The government seeks a ruling that defendant's statements are admissible as non-hearsay admissions of a party-opponent under Rule 801(d)(2)(A), including statements pulled from her email and phone. Gov't MIL at 4-6. Defendant expresses concern that the government might attempt to offer statements made by defendant after she invoked her right to an attorney. Dkt. No. 77 ("Def. Opp'n") at 5-7. The government affirmed in the pre-trial hearing that it does not intend to offer any such statements. The motion is GRANTED.

#### 2. Co-Conspirator Statements

The government seeks admission of statements of alleged co-conspirators of defendant, Robert (Bobby) and Mylin Ramos, as non-hearsay under Rule 801(d)(2)(E). Gov't MIL at 6-9. That rule allows admission of statements "made by the party's coconspirator during and in furtherance of the conspiracy." Rule 801(d)(2)(E). As the Ninth Circuit has summarized, "A coconspirator's statement may be admitted against a defendant where the prosecution shows by preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made 'in furtherance of' the conspiracy." *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006),

8

*on reh'g en banc*, 495 F.3d 1094 (9th Cir. 2007) (citations omitted); see also *Bourjaily v. United States*, 483 U.S. 171, 176 (1987) (establishing preponderance of the evidence as the standard for evaluating preliminary facts under Rule 801(d)(2)(E)). Rule 801(d)(2) also makes clear that a co-conspirator's statement "does not by itself establish . . . the existence of the conspiracy or participation in it." Fed. R. Evid. 801(d)(2); *see also United States v. Silverman*, 861 F.2d 571, 577 (9th Cir. 1988) ("[A] co-conspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy.").

The government seeks to introduce emails from Bobby and Mylin attaching invoices, emails from Bobby and Mylin attaching ledgers and accounting documents, and text messages between Bobby and/or Mylin and defendant. Gov't MIL at 7. As alleged, the government claims that Bobby and Mylin sent defendant inflated invoices for the purchase of tuna, which defendant paid. Dkt. No. 83 (USA Trial Memorandum) at 3-5. Bobby and Mylin then allegedly transferred or spent this money to benefit defendant and other members of defendant's family. *Id.*

The government's motion includes financial records that corroborate the communications in the messages. For example, in January 2017, defendant asked Mylin if she had sent money to defendant's husband and daughter and Mylin responded that she had, listing the amounts. Gov't MIL at 7, Ex. C. Bank statements for the accounts of defendant's husband and daughter show incoming wires for roughly those same amounts. *Id.*, Exs. D, E. As another example, an accounting of funds sent to defendant from Bobby is corroborated from bank records and other messages between the two. *Id.* at 7-8, Exs. F-J. The Court finds that this showing from the government meets its burden to admit evidence from Bobby and Mylin as co-conspirator statements.

Defendant's written opposition fails to persuade the Court otherwise on several grounds. *See* Def. Opp'n at 1-5. First, defendant does not directly address the government's showing, ignoring that the government has provided bank records that corroborate the specific statements between the parties as well as the general outlines of the conspiracy as alleged. Thus, defendant's argument that co-conspirator statements cannot simply be corroborated by other co-conspirator statements misses the point. The government offers bank records to corroborate the emails and text messages. Second, defendant argues that the "buyer-seller rule"—a rule that does not allow a simple illegal drug

9

transaction to create a conspiracy, *United States v. Moe*, 781 F.3d 1120, 1123 (9th Cir. 2015)—precludes the establishment of a conspiracy here. Def. Opp'n at 4. The buyer-seller rule does not apply because the purchase of tuna is not by itself illegal. The illegal act alleged by the government is the purchase of tuna at an inflated price, followed by kickbacks to the seller's family. Third, defendant states that the government seeks to introduce handwritten ledgers which would not be covered by the business records exception. Defendant does not cite authority that would support an argument that handwritten materials are less reliable than typed materials.

Defendant has further requested a hearing to be able to challenge the government's evidence—not to offer her own evidence. The Court determines that defendant had an opportunity to challenge the government's evidence in the written papers but failed to do so persuasively.

The government's motion to admit the co-conspirators' statements is GRANTED.

### 3. Defendant's Out-of-Court Statements When Offered by Defendant

The government requests that the Court preclude defendant from offering her own out-of-court statements since they are inadmissible hearsay when not offered by a party opponent. Gov't MIL at 9-11. The government also argues that defendant cannot use Rule 106, the rule of completeness, to avoid a hearsay problem. *Id.* at 10-11.

As amended in 2023, Rule 106 states in full: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." By the plain language of the rule, it sometimes allows a party to overcome a hearsay issue. Defendant may only offer her own out-of-court statements if the Court finds that admitting such statements would be necessary to fairly place other statements offered by the government in context. The motion is DENIED.

### 4. "Intrinsic" Evidence of the Charged Crimes

The government requests that the Court admit evidence "intrinsic" to the charged crimes, including evidence that defendant paid cash commissions to Mr. Kondo and evidence that defendant

10

wrote company checks to herself. Gov't MIL at 11. The government argues that "[b]oth of these acts demonstrate Nguyen's near absolute control over the Company's finances, particularly it's checking account, and her intent to deceive and cheat the Company (an element of wire fraud) in multiple ways." *Id.* at 11-12. Alternatively, the government contends the Court should admit this evidence as outside of the scope of Rule 404(b) or as probative of defendant's "motive, opportunity, intent, plan, preparation and lack of mistake" under Rule 404(b).

Evidence of other prior acts falls outside of Rule 404(b) when it is "inextricably intertwined with a charged offense." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (internal quotation marks and citation omitted). There are two categories of inextricably intertwined evidence:

> First, evidence of prior acts may be admitted if the evidence constitutes a part of the transaction that serves as the basis for the criminal charge. Second, prior act evidence may be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.

*Id.* (internal quotation marks and citations omitted).

The government first contends that defendant's alleged cash commissions to Mr. Kondo and check payments to herself are inextricably intertwined with the charged crimes. Gov't MIL at 11-13. Because the commissions to Mr. Kondo "occurred at the same time" and "through the same means" as the alleged fraud, with "overlapping time frames, methods, and willfulness," the government argues the acts are intertwined. But the Court does not find that these acts fall under either category as described in the case law. Nor do the check payments to herself. These acts are not necessary to offer a coherent story of the charged crimes, nor are they direct evidence of those crimes.

Nonetheless, the Court finds that evidence of these acts may be permitted under Rule 404(b)'s permitted uses, in particular to show opportunity, as they demonstrate her control over the company's finances. The Court therefore GRANTS the motion.

11

### 5. Self-Authenticating Financial Records

The government asks that the Court admit "self-authenticating" financial records under Federal Rules of Evidence 803(6) and 903(11). Gov't MIL at 14-16. Rule 803(6) excepts from the hearsay rule records of a regularly conducted activity. Rule 903(11) provides that records that meet the criteria under 803(6)(A)-(C) do not require extrinsic evidence of authenticity when accompanied by a certification by the records custodian and the adverse party has been given written notice and an opportunity to examine the certification. The government indicates that the defense reserved agreement on stipulating to the admissibility of certain financial records. Gov't MIL at 14. Yet the defense has not submitted a written opposition to the government's motion. The Court believes that the records listed by the government are covered under 803(6) and 902(11) and are admissible as long as the government provides the defense with notice and opportunity to inspect the record certifications and encourages the parties to submit a stipulation in this regard. The motion is MOOT.

### 6. Defendant's Undisclosed Evidence and Defenses

The government asks the Court to issue three rulings in regard to defendant's lack of disclosure of her witnesses or evidence. These requests are DENIED without prejudice.

#### a. Evidence Defendant has not Produced

The government asks the Court to preclude defendant from introducing evidence it has not produced pursuant to its reciprocal discovery obligations under Federal Rule of Criminal Procedure 16(b). Gov't MIL at 17. At the pretrial hearing, the defense has indicated it will provide its witness list by Friday, May 23, 2025 and its exhibit list by Tuesday, May 27, 2025.

#### b. Requiring Defendant to Produce Reverse Jencks Material

Federal Rule of Criminal Procedure 26(a) requires that parties provide prior witness statements to the other side after the witness has finished direct testimony. While not yet required by this rule or the Jencks Act (18 U.S.C. § 3500), the government here has already provided "memorandums of interviews of non-law enforcement witnesses in its possession." Gov't MIL at

12

18. The government requests that defendant also be required to produce any material in advance of a witness's direct testimony in order to avoid unnecessary delay. *Id.* The Court directed the parties to provide 48 hour notice of witnesses during trial. To avoid unnecessary delay, the Court directs the parties to submit any Jencks or reverse Jencks material at that time, if they have not done so already.

### c. Undisclosed Defenses

The government also asks the Court to bar defendant from using any undisclosed affirmative defenses. The defense asserted at the hearing it does not intend to offer any affirmative defenses.

### 7. Collateral or Embarrassing Information on Cross-Examination

The government argues that the defense should have to make an offer of proof "with regard to the relevance and admissibility of any sensitive personal information about witnesses." Gov't MIL at 19-20. At a general level, the Court agrees. The government must make specific objections during trial in this regard. This motion is GRANTED.

### 8. Exhibits During the Opening Statement

The government wishes to show a small number of documents and items during its opening statement. Gov't MIL at 20. The government may only show documents and must provide the defense advance notice of any documents it intends to show. This motion is GRANTED.

### 9. Sequestration Order

The government requests that all witnesses be excluded from observing trial proceedings except its FBI case agent Michael Tomeno, FBI Forensic Accountant Marcy Ammirato, and IRS Revenue Agent Mary Trabold. The Court grants the request as to the government's case agent Mr. Tomeno, but not as to Ms. Ammirato and Ms. Trabold. The government may inform Ms. Ammirato and Ms. Trabold as to which exhibits have been admitted, but they may not sit in the courtroom during trial. The Court has decided above that the defense investigator is likewise excluded from

13

the sequestration order. Defendant's expert witness Mr. Tira may also sit in the courtroom during trial. The motion is GRANTED as specified.

#### 10. Arguments Regarding Punishment

Lastly, the government moves to preclude any reference by the defense to defendant's potential sentence, including statements like "You understand the defendant is facing at least a decade in prison if convicted," "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come." Gov't MIL at 22. The Court agrees that references to punishment may improperly prejudice the jury. The motion is GRANTED.

### 6. Government's Motion re Expert Witness

On May 13, 2025, the government filed a motion to exclude defendant's offered expert witness, John Tira. Dkt. No. 80. The government does not dispute Mr. Tira's qualifications as an expert in accounting. *Id.* at 4. Rather, the government protests that defendant has not provided "[a]ny description or summary of Mr. Tira's actual opinions or testimony." *Id.* Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) requires that a defendant's expert witness disclosure contain "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; [¶] the bases and reasons for them; [¶ and] the witness's qualifications." In their response to the government's motion, defendant has provided a sufficient statement. *See* Dkt. No. 90. The government's motion is DENIED. However, if Mr. Tira will be offering specific numbers as part of his testimony, the defense must provide the government of advance notice of this planned testimony. The Court will address hearsay objects in Mr. Tira's testimony as they arise.

### 7. Defendant's Motion to Allow Remote Testimony

Defendant has moved to allow Robert Ramos and Mylin Ramos appear as remote witnesses during trial. Dkt. No. 87. Defendant argues that remote appearance is appropriate for two reasons. Primarily, these individuals are alleged co-conspirators and fear indictment and arrest if they appear

14

in person. *Id.* at 3. Secondarily, defendant asserts that since they live in the Philippines, it is "more convenient" for them to appear remotely. *Id.* at 2.

The government strongly objects, arguing that the Court has no way to ensure the reliability of such testimony and that defendant has not presented facts that establish the witnesses' unavailability. Dkt. No. 89. The Court agrees, finding several problems with the proposal. First, there would be no way to compel the witnesses to answer any questions they did not want to answer. If the testimony was interrupted or flawed in any way, the Court would be forced to strike the entire testimony, but at a significant risk of prejudice or confusion for the jury. Second, the witnesses would be beyond the Court's reach to enforce penalties for perjury. Third, if the alleged co-conspirator witnesses were to come to the Court to testify, the Court would first ask whether they had their own legal counsel, and the Court would not allow the witnesses' testimony if they did not.

At the pre-trial hearing, defense counsel suggested the Court allow for the witnesses' depositions to be taken as an alternative. The defense has had months to determine whether the testimony of these two witnesses would be helpful, but only submitted its request three weeks prior to the start of trial. The Court will not order an international deposition to take place at this stage of the proceedings.

**IT IS SO ORDERED**.

Dated: May 20, 2025

SUSAN ILLSTON
United States District Judge